**CRUMP v. ANDRESS et al.    (No. 562–4308.)**

(Commission of Appeals of Texas, Section B.
Dec. 10, 1925.)

**1. Adverse possession ⬤═62(3)—Widow may disclaim homestead and hold adversely as against sons.**

A widow may disclaim right of homestead and hold adversely under some independent title as against the sons of deceased husband.

**2. Adverse possession ⬤═62(3)—Must be openly hostile and brought home to attention of those adversely interested.**

Where one beginning possession under homestead claim asserts title by adverse possession under independent claim, act must be openly hostile, and must directly or otherwise be brought home to the attention of those adversely interested.

**3. Adverse possession ⬤═115(5)—Held for jury under evidence.**

Where widow, who began possession under homestead claim, asserted claim of ownership by adverse possession under independent title, question of adverse possession *held* for jury under evidence.

**4. Adverse possession ⬤═85(2)—Evidence of judgment on which deed under which widow claimed to hold adversely was based admissible.**

In controversy over land, where widow who began possession under homestead claim asserted ownership by adverse possession under independent title, based on deed from third party claiming under judgment in litigation with her deceased husband, evidence of court proceedings in that case was admissible as showing bona fides of claim, although judgment could not be binding on other parties who had not been parties to former suit.

**5. Partition ⬤═5—Evidence of oral partition sufficient for jury.**

In controversy between widow and her sons over certain tract of land, evidence of oral partition allotting tract to widow *held* sufficient for jury.

**6. Partition ⬤═5—Parol partitions permissible.**

Parol partitions are permissible.

Error to Court of Civil Appeals of Tenth Supreme Judicial District.

Action by S. D. Andress and others against E. M. Crump. Judgment for plaintiffs was affirmed by the Court of Civil Appeals (265 S. W. 1074), and defendant brings error. Reversed and remanded.

Bryan & Maxwell and Sam E. Stratton, all of Waco, and Chas. L. Black, of Austin, for plaintiff in error.

Jno. B. McNamara, Sleeper, Boynton & Kendall, and W. H. Jenkins, all of Waco, for defendants in error.

POWELL, P. J.  The 200 acres of land, title to which is involved in this case, belonged to

J. P. Clements originally. In 1870, he married Mattie Martin, and they occupied the land as a homestead. To them three children were born. On October 18, 1875, J. P. Clements died. His widow and children continued in possession of the 200 acres. In 1881, the widow Clements married one T. B. Crump. She and Crump lived on the 200 acres until 1888, when he died. Mattie Crump and T. B. Crump had three children also. A few years after the death of T. B. Crump, his widow moved onto a tract of land which the three Clements children had bought, to which tract of land we shall hereafter refer more particularly, and known as the Sprague tract of 350 acres. After remaining on the Sprague tract for about five years, the widow moved back on the 200 acres in 1896. In 1898, she married her third husband, one S. H. Crump, and they lived on the 200 acres until 1920. At that time, she and S. H. Crump left the 200 acres and moved onto a tract owned by the latter. In 1921, Mattie Martin-Clements-Crump-Crump conveyed the 200 acres to E. M. Crump.

- In addition to aforesaid statement, we now quote from the Court of Civil Appeals as follows:

"When Mrs. Mattie Crump abandoned the 200 acres as her home in 1920 and conveyed same to E. M. Crump, appellees brought this suit for the land, claiming same as the children of J. P. Clements. After the suit was brought, Mattie Crump died, and the executor of her will was made a party defendant. The question involved is as to whether appellees, as the heirs of J. P. Clements, are entitled to the property, or whether the property belonged to Mattie Crump, his wife, and through her descended by deed and will to her children by T. B. Crump. Appellant claims the title to the property as the heir of Mattie Clements Crump and also by limitation and by deed from Mattie Crump. The cause was tried to a jury, and the court submitted only the following issue: 'Did Mrs. Mattie Crump, at the time she moved off of the 200-acre tract onto the Sprague tract, or at any time while she was living on the Sprague tract, have the fixed intention of never returning to and living on the 200-acre tract as a home?' to which the jury answered, 'No,' and based upon said verdict and other findings by the court, the court entered judgment for the appellees for thirty-two forty-seconds of the land and for thirty-two forty-seconds of $2,400 rent for the years 1922 and 1923, from which E. M. Crump has appealed."

The Court of Civil Appeals, Chief Justice Gallagher not sitting, affirmed the judgment of the District Court. See 265 S. W. 1074.

E. M. Crump undertook to claim title to this land, under his mother. His mother claimed absolute and independent title to it in two ways: In the first place, under a deed from Mary N. Clements, who, before the death of J. P. Clements, had sued the latter, not only for the 200 acres here involved, but other tracts of land as well. In the second

place, under a parol partition between Mattie Clements Crump and the three children she had by J. P. Clements. We will now discuss these two titles in their order.

[1] In connection with the deed from Mary N. Clements, E. M. Crump claims title by limitation, contending that his mother had held adverse possession of said land from January, 1876, the date of the Mary N. Clements deed to her, until 1920, except for the five years, 1891 to 1896, when she was on the Sprague tract. In fact, there is no contention so far as this case is concerned that the Mary N. Clements deed actually conveyed a good title. But it is contended that the mother of plaintiff in error did gain title by limitations under that deed and the adverse possession in connection therewith. This is conceded by all parties to be true if her possession was adverse. Was it adverse? Defendants in error contend that they could not sue the widow of J. P. Clements until she abandoned possession of the 200 acres, and that the statute did not begin to run until 1920. In other words, it seems to be contended that one who is entitled to possession because of a homestead right cannot repudiate that right and claim the right of possession under an independent deed or title. In contravention of this doctrine, counsel for plaintiff in error, in their application, affirmatively answer their own question propounded as follows:

"The legal question involved here is this: Where the widow purchases an independent title, believed and asserted by her to be good, and bases her right to the possession of land solely upon such title, and denies and repudiates any privity of title with the heirs or remaindermen, does this not start the running of the statute of limitations in her favor?"

These same counsel rely mainly upon the opinion of the Supreme Court of Texas in the case of Humphreys v. Edwards, 89 Tex. 512, 36 S. W. 333, 434. We think this case is directly in point, and there is evidence in the record authorizing the submission of this issue to the jury. Counsel prepared and asked that appropriate issues in this connection be submitted to the jury. Their request was refused. In our judgment, this action was erroneous.

In the case of Humphreys v. Edwards, supra, the Court of Civil Appeals said:

"Under appellants' seventh assignment of error they complain that the court gave the following instruction requested by the plaintiffs below, to wit: 'The jury is here charged that, if they believe from the evidence that after the death of M. J. Humphreys his widow assumed the sole and full possession of the 202 acres of land in controversy, and at the time of assuming such control she acknowledged the interest of plaintiffs, as heirs of her deceased husband, then no limitation would begin to run in her favor because of her entire control, until she in some way gave notice to plaintiffs that their interest in the land was denied by her; and the burden of proof in such case would be upon the defendants pleading ten years' limitation to show, first, that such widow then in possession claimed the entire title as against plaintiffs; and, second, to show that a knowledge was brought home to plaintiffs that she claimed the entire title as against them, and, in the absence of such, defendants could not recover on their plea of ten years' limitation.' It was claimed by the appellees that M. J. Humphreys, as the heir of Geo. P. Humphreys, deceased, acquired all the land, that at his death he left his widow, who was entitled to the use of the property as her homestead, and that appellees, as heirs, were entitled to a portion of it. They claimed that the possession of the land by the widow as her homestead was not adverse, and that neither she nor a tenant holding under her could set the statute of limitation in motion against them without some open, notorious hostile act, indicating an exclusive claim as against them. This far, the idea presented in the charge would be proper; but, if it should be conceded from the wording of the charge that it was necessary to bring home to them direct notice of her adverse claim it would be erroneous. As the case must be reversed and remanded upon other grounds, we would suggest that this charge should be so modified as to present these views plainly, without leaving it open to the interpretation that actual, direct notice is required. Cryer v. Andrews, 11 Tex. 181; Alexander v. Kennedy, 19 Tex. 496 [70 Am. Dec. 358]; Gilkey v. Peeler, 22 Tex. 668; same case, 27 Tex. 355; Church v. Waggoner, 78 Tex. 203 [14 S. W. 581]."

The Supreme Court, speaking through Chief Justice Gaines, referring to the opinion just quoted by us, said:

"This is a writ of error to a judgment which reversed the judgment of the trial court and remanded the cause. In order to give this court jurisdiction, it was alleged in the petition for the writ of error that the decision of the Court of Civil Appeals practically settles the case. We have carefully examined the case and have found no error in the rulings of that court. We refer to the able opinion of the Chief Justice, who spoke for the court, for the grounds upon which our conclusions are based."

This holding in the Edwards Case has been cited with approval in Tiffany on Real Property (2d Ed.) vol. 2, p. 203. The author also cites other cases. The same conclusion is reached in the case of Reno v. Blackburn (Ky.) 72 S. W. 775. See, also, Criswell v. Criswell, 101 Neb. 349, 163 N. W. 302, L. R. A. 1917E, 1103, and Russell v. Tipton, 193 Ky. 305, 235 S. W. 763. These cases are sound, it seems to us.

It is true that a widow has the right of possession under her homestead claim. But there is no law in our state which says that she may not, at her pleasure, repudiate such possession and base her continued possession thereafter upon some independent title. She paid $400 of her own insurance money in 1876, two or three months after her first husband's death, for the deed from Mary N. Clements. She took the deed in her own name. Not only so, but she recorded it im-

mediately. Not only that, but there is evidence in this record that she told her three children by J. P. Clements, on repeated occasions, that she was in possession by virtue of this deed. In other words, there is evidence that she told these children her intention in buying this independent title. When she did so, she abandoned her right to possess this land under her homestead claim. It was the duty of those claiming the J. P. Clements title at that time to sue her for possession. They could, in that way, have ousted her from possession if the Mary N. Clements title should have proven to be inferior to theirs. A suit of that kind, promptly brought, would have settled the issue as to which of these titles was superior. But, after waiting all these years, many more than ten years, those claiming the J. P. Clements title lost it by limitation, provided, of course, the jury had found in this case, under proper instructions, that the widow was claiming possession solely by virtue of her deed from Mary N. Clements, and had brought notice of such claim home to those adversely interested.

[2] As stated by the court in the Edwards Case, the act must be openly hostile and must, in some way, directly or otherwise, be brought home to the attention of those adversely interested. In other words, until notice is actually brought home to them, we think they would be justified in assuming that possession, begun under a homestead claim, would so continue, in whole or in part. But they cannot shut their eyes or close their ears to notice that the claim under the homestead right is being abandoned and repudiated.

We are not quite sure that the Court of Civil Appeals is at variance with the rule we have laid down and in which we follow our Supreme Court. It may be that the Court of Civil Appeals has failed to give full effect to the facts in the record or to interpret them correctly. For instance, at one place that court says:

"It was an established fact that Mattie Crump did for a long number of years prior to her death in 1922 claim that she owned said 200 acres of land, and made that statement in the presence of the children of J. P. Clements and to a number of people in the neighborhood."

In another place, the Court of Civil Appeals says:

"A mere statement by a life tenant that the property is his is not sufficient occasion for the remainderman to institute a suit to determine title."

In other words, the Court of Civil Appeals may intend to say that the widow could have claimed, and was claiming, under her homestead right and at the same time also under the Mary N. Clements deed. There are authorities among our Courts of Civil Appeals to this effect. These decisions say that, as long as that double claim exists, no adverse possession is had by the widow. Counsel, in the application in the instant case, take no issue with this line of authority. But, it is here contended that there is evidence in this record indicating that she not only claimed title under the Mary N. Clements deed, but repudiated her homestead claim under the J. P. Clements title. In other words, counsel contend that she claimed possession solely under a title which excluded her children by Clements. We think the evidence does raise this very issue. If the Court of Civil Appeals held differently, we think they have not given full effect to the facts in the record. It is not necessary for us to take any issue with the authorities cited by the Court of Civil Appeals, based upon a certain state of facts. That question is not before us, and we do not pass upon the correctness of those authorities.

[3] We think the judgment must be reversed for the failure to submit the issues already discussed by us. Counsel, in their application, contend that this adverse possession by the widow was conclusively shown, and that their peremptory instruction should have been given. We do not think so. We are of the view that it is better for a jury to weigh all the facts and circumstances in evidence and pass upon this fact issue.

[4] Since the case must be reversed anyway, we think the court, upon another trial, should not exclude the court proceedings in cause No. 2544, Mary N. Clements v. J. P. Clements. We have already alluded to this case, filed before the death of J. P. Clements. Counsel for plaintiff in error claim it was error to have excluded those proceedings before. We quote as follows from the application herein:

"These proceedings, if admitted in evidence, would have explained the compromise that Mattie Crump made with Mary N. Clements, as testified to by various witnesses. It would have shown that she was compromising a pending litigation against her husband, who had died a little more 'than two months before. It would have shown that, as to the other lands not thus compromised, the suit went to judgment and the plaintiff, Mrs. Mary N. Clements, recovered the same. All of this would have explained the good faith of the conveyance and would have tended to reinforce the claim that Mattie Crump based her possession on this deed, and not upon the title of J. P. Clements. It would have shown that the title of J. P. Clements was in litigation at the time of his death, serious litigation, and that his widow had to settle this litigation and acquire title to the property and pay for same out of her own funds. It thus would have explained why she claimed the land under this purchase, instead of claiming it under a homestead right based upon the title of John P. Clements. For these reasons it is submitted that the testimony was admissible."

The Court of Civil Appeals says that the evidence was not admissible; that it "could not be binding on appellee, since neither they

nor any one representing their interests were parties to the suit." Of course, the Clements children could not be bound by the judgment in the old case mentioned between Mary N. Clements and their father for the reason stated by the court. It is not claimed they were so bound.· But the evidence does throw light on the bona fides of the claim of the mother of these children in basing her possession upon the deed from Mary N. Clements. The facts disclosed by those proceedings throw much light on the adverse character of her claim and whether or not there was any real basis for her action in relying upon that title. The testimony, upon proper request, can be limited to the purposes for which it is offered, if in fact it is offered upon another trial.

[5] The Court of Civil Appeals does not pass upon the next question presented in the application except by a blanket overruling of various assignments. But, as we have already indicated, plaintiff in error contends that Mrs. Mattie Clements Crump, irrespective of her title by limitations, and in addition thereto, acquired this 200-acre tract by oral partition between herself and her three children by Clements. It is insisted that this issue was raised by the evidence and should have been submitted to the jury. We sustain this contention.

On January 12, 1876, one S. H. Renick conveyed the 350-acre Sprague tract to the three minor children of J. P. Clements for a recited consideration of $3,800. There is evidence in the record that $1,300 of this money was paid by their mother, and that she owned, as a silent partner, her proportionate part of the land. When the children became of age and desired a partition, under some of the evidence in the record, the mother moved off the Sprague tract and went back on the 200 acres. The 350 acres were partitioned among the three Clements children by deed bearing date November —, 1894. There is evidence to the effect that, when Mrs. Mattie Crump left the 350-acre place and returned home, she and her three Clements children had a partition agreement under which these three children gave up any possible claim they had in the 200 acres, and she, in turn, gave up her claim to her part of the 350 acres. As the deeds to the tracts were already so written as to put prima facie title in the parties in line with this agreement, there seemed to be no necessity of passing new deeds of partition. There was evidence that she, at that time, wanted her three Clements children to get her interest in the 350 acres, and desired that her three Crump children have the 200 acres for which she had spent her own money in securing the deed from Mary N. Clements. We think the evidence raised these issues, and they should have been submitted to the jury. And the proffered testimony tending to show such partition was admissible.

[6] Parol partitions are permissible under the law. See Warren v. Frederichs, 76 Tex. 647, 13 S. W. 643; Linam v. Anderson, 2 Tex. Civ. App. 631, 21 S. W. 768. On the amount of evidence sufficient to raise the issue of parol partition, after a long lapse of time, see Haines v. West (Tex. Civ. App.) 102 S. W. 436; Whitaker v. Allday, 71 Tex. 623, 9 S. W. 483; Glasscock v. Hughes, 55 Tex. 461.

We believe what we have already said disposes of all questions raised in the application. For the errors discussed, we think the judgments must be reversed; therefore we recommend that the judgments of the district court and Court of Civil Appeals be reversed, and the cause remanded to the former for another trial not inconsistent with this opinion.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.