TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00574-CV






A. D. Willis Company, Inc./Metal Building Components, Inc., Appellants



v.



Metal Building Components, Inc. and National American Insurance Company/


A. D. Willis Company, Inc., Appellees







FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT


NO. 22,237, HONORABLE HAROLD R. TOWNSLEE, JUDGE PRESIDING







 A.D. Willis Company, Inc. ("Willis") seeks reversal of the district court judgment
awarding actual damages, attorney's fees, costs and interest to Metal Building Components, Inc.
("MBCI") based on a jury verdict in favor of MBCI on its breach of contract claim. By cross-appeal, MBCI requests a reformation of the judgment that would (1) disregard the finding that
MBCI failed to mitigate damages; (2) award appellate attorney's fees; and (3) allow for joint and
several liability against appellee, National American Insurance Company ("National"). We will
affirm the district court's judgment.


Background

 In 1996, Willis, a roofing contractor, contracted with Bastrop County ("County")
to repair the roofs on the Juvenile and Adult Probation Buildings (the "County Project"). The
contract required Willis to provide a warranty in accordance with the County's project manual. 
MBCI manufactures metal building components, some of which are incorporated into roofs. 
MBCI contracted with Willis to provide materials and a warranty for the County Project.(1) MBCI
delivered the materials, which were installed in the County Project, and invoiced Willis for
payment within fifteen days, in conformity with the Terms and Conditions of Sale Agreement
("parties' agreement"). Although Willis installed the materials and received payment from the
County, it did not pay the invoices.

 Willis repeatedly refused to pay for any materials, in part, because MBCI invoiced 
the warranty before it was delivered, allegedly in contravention of the parties' agreement. MBCI
repeatedly sought payment for the materials installed on the County Project and refused to deliver
the warranty. MBCI maintained that issuance of the warranty was contingent on Willis's paying
for the warranty and obtaining a certificate of substantial completion from the County's
representative. MBCI also asserted that pre-payment for the warranty was an industry standard,
was MBCI company policy, and was consistent with the course of dealing that Willis and MBCI
had followed previously. Furthermore, upon inspection of the County Project, MBCI discovered
allegedly shoddy workmanship that rendered the roof likely to leak and impossible to warrant.

 In April 1997, MBCI filed suit against Willis and its corporate surety, National. 
Willis answered and contends that thereafter the parties reached an oral agreement that Willis
would simultaneously exchange payment in full (for both materials and warranty) for MBCI's
delivering the warranty. The parties agree that Willis's representative presented a check to
MBCI's counsel in May, but the exchange was not consummated. Willis maintains that its
representative "tendered" the check, but withdrew it when he was offered an inferior warranty that
did not conform to the requirements of the County Project. MBCI maintains that Willis's
presentment did not qualify as tender for the outstanding debt because it was conditioned on
receipt of the warranty. The parties agree that the representative never relinquished the check to
MBCI's counsel. The district court later resolved this dispute in favor of MBCI by granting its
motion for partial summary judgment based on Willis's defense of tender.

 In preparation for trial, MBCI inspected the County Project and found installation
defects. Willis performed repairs on two occasions and in December 1997, the County issued
certificates of substantial completeness. Willis deposited $74,255.93 into the district court's
registry, which was eventually released to MBCI. MBCI deposited the warranty into the court's
registry, which was later released to Willis.

 The trial proceeded before a jury, which rendered the following verdict: (1) Willis 
breached the County Project contract with MBCI; (2) Willis owed MBCI $78,825.70; (3) MBCI's
attorney's fees for preparation and trial were $200,000 (the jury refused to award any appellate
attorney's fees); (4) National owed MBCI $78,825.70; and (5) MBCI failed to mitigate its
damages in the amount of $100,000. The district court rendered judgment against Willis as
follows: $278,825.70 to MBCI as actual damages and attorney's fees, to which Willis was
credited $100,000 for MBCI's failure to mitigate plus $74,255.93 for the amount tendered into
the court's registry. The court issued a take-nothing judgment as between MBCI and National,
who was acting as surety on the payment bond.

 On appeal, Willis challenges the grant of partial summary judgment in favor of
MBCI on Willis's defense of tender. Furthermore, Willis attacks the jury charge, calculation of
damages, application of the mitigation finding, award of MBCI's attorney's fees, and denial of its
motions for judgment notwithstanding the verdict. MBCI files its own cross-appeal with a request
that the trial court judgment be reformed to include its appellate attorney's fees and to disregard
the finding on mitigation. In addition, MBCI argues that a joint and several judgment should be
rendered against both Willis, as principal, and National, as surety.


Discussion

Willis's Issues

 First, Willis asserts that the district court erred by granting MBCI partial summary
judgment on Willis's defense of tender. The standards for reviewing a motion for summary
judgment are well established: (1) the movant for summary judgment has the burden of showing
that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law;
(2) in deciding whether there is a disputed material fact issue precluding summary judgment,
evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must
be indulged in favor of the nonmovant and any doubts resolved in its favor. See Nixon v. Mr.
Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). The function of summary
judgment is not to deprive litigants of the right to trial by jury, but to eliminate "patently
unmeritorious claims or untenable defenses." Swilley v. Hughes, 488 S.W.2d 64, 68 (Tex. 1972). 
The propriety of summary judgment is a question of law; therefore, we review the trial court's
decision de novo. See Texas Dep't of Ins. v. American Home Assurance Co., 998 S.W.2d 344, 347
(Tex. App.--Austin 1999, no pet.).

 Tender is an unconditional offer by a debtor to pay a sum of money not less than
the full amount due on a debt. See Baucum v. Great Am. Ins. Co., 370 S.W.2d 863, 866 (Tex.
1963). The tender of payment must include everything to which the creditor is entitled; any less
sum is ineffectual. See French v. May, 484 S.W.2d 420, 426 (Tex. Civ. App.--Corpus Christi
1972, writ ref'd n.r.e.). Costs need not be tendered where tender is made before the
commencement of suit, but where tender is made after suit has commenced, it must include
accrued court costs. See Rancho Camille, S.A. v. Beachum, 596 S.W.2d 632, 639 (Tex. Civ.
App.--Waco 1980, no writ). The tenderer must relinquish possession of the funds. See Baucum,
370 S.W.2d at 866. A mere declaration of tender, unaccompanied by actual payment, cannot
constitute a valid tender. See Texas Employers Ins. Ass'n v. Underwriting Members, 836 F. Supp.
398, 410 (S.D. Tex. 1993).

 In May 1997, after suit had been filed, Willis's agent visited the offices of MBCI's
counsel. It is undisputed that he possessed a cashier's check made out to MBCI for the amount
of the outstanding invoices. He was authorized to relinquish the check only in exchange for a
specific warranty, which was not forthcoming. The agent left the meeting without relinquishing
the check. Willis characterizes these efforts as a valid "tender" which, if effective, would be a
complete defense to MBCI's breach of contract claim. However, Willis's efforts do not rise to
the level of a valid tender. Willis never offered to pay the past due invoices unconditionally. See
Baucum, 370 S.W.2d at 866. Its agent did not relinquish possession of the check. See id. 
Willis's "mere declaration of tender" is insufficient; actual payment is required. See Texas
Employers Ins. Ass'n, 836 F. Supp. at 410. Even after every reasonable inference is indulged in
favor of Willis, there remains no genuine issue of material fact regarding tender. Summary
judgment was properly granted.

 MBCI characterizes the failed attempts of tender as settlement negotiations and
contends that the district court improperly admitted evidence of these transactions. Evidence of
settlement negotiations is inadmissible when used "to prove liability for or invalidity of the claim
or its amount." Tex. R. Evid. 408; Tarrant County v. English, 989 S.W.2d 368, 377 (Tex.
App.--Fort Worth 1998, pet. denied). Willis's failed attempts at tender could have led to
settlement negotiations, but did not constitute settlement negotiations. In its brief, MBCI describes
the failed tender offer as follows: Willis's agent "went to the office of MBCI's counsel in May
1997, waved the check in front of MBCI's counsel and refused to relinquish possession because
he was unhappy with the form of the Weathertightness Warranty MBCI was offering." This event
occurred after suit had been filed. Willis's agent was not accompanied by counsel. It is not clear
that he had the authority to negotiate, nor did he express the desire to do so. He presented an
ultimatum: he would relinquish the check only if a specific warranty was offered. This does not
constitute settlement negotiations. However, this evidence was relevant to the jury's determination
of which party, if either, breached the contract, and if so, whether damages could have been
avoided. "Evidentiary rulings are committed to the trial court's sound discretion." Owens-Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion
only when it acts in an unreasonable or arbitrary manner, or when it acts without reference to any
guiding rules and principles. See Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex.
1991). This Court may not reverse for abuse of discretion merely because we disagree with a
decision of the trial court, if that decision was within the trial court's discretionary authority. See
id. We cannot conclude on this record that the district court abused its discretion by admitting the
evidence on the issue of breach and mitigation of damages. 

 Second, Willis asserts that the district court erred in failing to submit a jury
question concerning the necessary terms of the parties' agreement. Willis contends that the
relevant agreement consisted of promises to simultaneously exchange payment for the warranty
and contends that the trial court erred in not charging the jury accordingly. Whether a contract
is ambiguous is a question of law to be resolved by the trial court. See Lafarge Corp. v. Wolff,
Inc., 977 S.W.2d 181, 184 (Tex. App.--Austin 1998, pet. denied). A contract is not ambiguous
if it can be given a definite meaning as a matter of law. See id. The "agreement" and "terms" to
which Willis refers only arose, if at all, after suit was filed. The factual disputes pertaining to
events that occurred after suit was filed in April 1997 are immaterial to resolving whether the 1996
contract was breached. There was no error in omitting a question regarding the terms of the 1996
contract.

 Third, Willis asserts that the district court erred by instructing the jury to consider
improper elements of damages. The district court instructed the jury to calculate MBCI's damages
by considering only (1) the "amount owed by Willis, if any, to MBCI as of the date of the filing
of the lawsuit"; and (2) "MBCI's expenses, if any, for costs of collection." Willis maintains that
the first element of damages was improper because "[t]his was not a case in which Appellee had
not been paid; this was a case in which the most Appellee could claim was it had been paid late." 
To the contrary, when MBCI filed suit on April 29, 1997, Willis had not paid for any of the
roofing materials installed in the County Project, although Willis had been paid by the County. 
Depositing funds into the registry of the court only after MBCI filed suit does not constitute mere
late payment. This was a proper element of actual damages suffered by MBCI due to Willis's
refusal to pay the debt under the terms of the parties' agreement.

 Regarding the second element of damages, Willis contends that the jury considered
improper costs, such as those incurred for facsimiles, trial exhibits, photocopies, and postage. In
support, Willis cites WesTech Engineering. See WesTech Eng'g, Inc. v. Clearwater Constructors,
Inc., 835 S.W.2d 190, 206 (Tex. App.--Austin 1992, no writ) ("Costs generally do not include
costs billed to the client as part of the attorney's fee for services provided. Rather, costs usually
refer to fees and charges required by law to be paid to the courts . . . ."). Willis misplaces its
reliance on this case. WesTech dealt with the award of court costs. MBCI was awarded its
collection costs under the terms of the parties' agreement, which read in part: "If an invoice is
placed in the hands of an attorney for collection, or if collected by any legal proceedings, Buyer
agrees to pay MBCI . . . costs incurred in the collection of sums owed by Buyer to MBCI." 
WesTech is inapplicable to the award of collection costs, and Willis does not argue that it should
be excused from this term of the contract. The instruction on damages was proper.

 Fourth, Willis asserts that the district court erred in its application of the mitigation
finding. The jury found that MBCI suffered damages of $78,825.70 and incurred attorney's fees
of $200,000. Furthermore, the jury found that MBCI failed to mitigate its damages in the amount
of $100,000. In its judgment, the district court added damages and attorney's fees together and
subtracted the mitigation amount from the sum to arrive at MBCI's total award. [($78,825.70 +
$200,000) - $100,000 = $178,825.70] Willis argues that this results in an award of attorney's
fees as an element of damages, when attorney's fees were not presented to the jury as an element
of damages. However, it is clear that the jury considered both damages and attorney's fees when
it determined that MBCI failed to mitigate by an amount greater than the actual damages awarded
by the jury. The jury apparently concluded that MBCI could have mitigated damages and
attorney's fees if it had made reasonable efforts to negotiate a compromise. The district court
properly computed MBCI's award based on the jury's verdict, which included both damages and
attorney's fees.

 Fifth, Willis asserts that the district court erred by failing to render a take-nothing
judgment given the mitigation finding ($100,000) completely offset the damage finding
($78,825.70). However, under either the terms of the parties' agreement or statute, MBCI's
recovery of costs and attorney's fees was not contingent on receipt of a net recovery in its breach
of contract cause of action. The parties' contractual agreement provided that "[i]f an invoice is
placed in the hands of an attorney for collection, or if collected by any legal proceedings, Buyer
agrees to pay MBCI its reasonable attorney's fees and costs." This clause did not condition
Buyer's payment of attorney's fees and costs on a net recovery by MBCI. It is undisputed that the
invoices were past due, and MBCI did engage counsel to collect them. Willis deposited a check
into the court's registry only after suit was initiated. Therefore, MBCI was entitled to fees and
costs under the terms of the parties' contractual agreement. See Travelers Indem. Co. v. Mayfield,
923 S.W.2d 590, 593 (Tex. 1996) ("In Texas, attorney's fees may not be recovered from an
opposing party unless such recovery is provided for by statute or by contract between the
parties.").

 Furthermore, the Texas Civil Practice and Remedies Code allows recovery of
reasonable attorney's fees on a claim for an oral or written contract. See Tex. Civ. Prac. & Rem.
Code Ann. § 38.001(8) (West 1997). A party with "a valid claim and a just amount owing not
tendered or paid within thirty days after the presentment" to the debtor is entitled to attorney's
fees. Buckner Glass & Mirror Inc. v. T.A. Pritchard Co., 697 S.W.2d 712, 714 (Tex.
App.--Corpus Christi 1985, no writ). It is clear that a claimant whose damages are entirely offset
by a successful counterclaim is still entitled to attorney's fees. The supreme court has held 


that the proper construction of article 2226(2) is to allow recovery of attorney's fees
incurred in prosecuting a just claim under the article, even if the amount of the
claim is entirely offset by an opposing party's claim. . . . we disapprove of the
language in the previously cited cases requiring a net recovery in order to obtain
attorney's fees under article 2226 or under the DTPA.



McKinley v. Drozd, 685 S.W.2d. 7, 11 (Tex. 1985). Section 38.001(8) additionally supports the
award of MBCI's attorney's fees. See Tex. Civ. Prac.& Rem. Code § 38.001 (West 1997). 

 Sixth, Willis asserts that the district court erred in failing to grant its motion for
judgment notwithstanding the verdict ("JNOV") regarding the findings that (1) Willis breached the
agreement; (2) MBCI did not breach the agreement; and (3) Willis suffered no damages. The
district court "may disregard a jury finding and grant a JNOV only if there is no evidence from
which the jury could have made its findings." Tubb v. Bartlett, 862 S.W.2d 740, 744 (Tex.
App.--El Paso 1993, writ denied). "If there is any competent evidence to support the jury's
finding, the court may not disregard that finding and grant a JNOV." Id. at 745. "[T]he evidence
must be reviewed in the light most favorable to the jury finding, considering only the evidence and
inferences tending to support the jury finding." Id. at 744-45. This Court "must determine
whether there is any evidence more than a scintilla to support the findings." Id. at 744. It was
uncontested that Willis (1) ordered and received roofing materials from MBCI; (2) had no
objection to the quality of the materials; (3) installed the materials on the County Project; and (4)
received payment for the materials from Bastrop County. Paragraph six of the parties' agreement
states that invoices are due fifteen days from date of shipment. By its own admission, Willis
refused to pay for any materials until it first received the warranty. The evidence supports the
jury's findings that Willis breached the agreement, MBCI did not, and Willis suffered no damages. 

 Seventh, Willis asserts that the district court erred in failing to grant its motion for
JNOV with regard to Willis's attorney's fees. An award of Willis's attorney's fees was contingent
on a finding that MBCI breached the agreement. See Tex. Civ. Prac. & Rem. Code Ann.
§ 38.001(8); Victoria Air Conditioning, Inc. v. Southwest Tex. Mechanical Insulation Co., 850
S.W.2d 720, 725 (Tex. App.--Corpus Christi 1993, writ denied) (stating that award of fees under
section 38.001 requires recovery of valid claim in suit on contract). Because there is more than
a scintilla of evidence to support the jury's finding that Willis breached the parties' agreement and
MBCI did not, the district court properly denied Willis's motion. See Tubb, 862 S.W.2d at 744.


MBCI's Issues

 First, MBCI asserts that the district court erred in failing to award MBCI appellate
attorney's fees. The jury charge asked the following: "What is a reasonable fee for the necessary
services of MBCI's attorneys in this case, stated in dollars and cents, if any?" The jury answered
as follows: (1) $200,000 for preparation and trial; (2) $0 for an appeal to the Court of Appeals;
(3) $0 for making or responding to an application for writ of error to the Supreme Court of Texas;
(4) $0 if application for writ of error is granted by the Supreme Court of Texas. Apparently,
MBCI did not effectively convey to the jury that it could be an unwilling participant in the event
that Willis appealed. The jury apparently concluded that an appeal was not "necessary" in this
case. MBCI cites no case law in support of its request to disregard the jury finding and render
judgment for appellate fees under section 38.001 of the Texas Civil Practice and Remedies Code. 
We decline to do so.

 Second, MBCI asserts that the district court erred in reducing MBCI's award by
$100,000, based on the jury's verdict that MBCI failed to mitigate its damages. In deciding a no-evidence point, we must consider only the evidence and inferences tending to support the finding
of the trier of fact and disregard all evidence and inferences to the contrary. See Burroughs
Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995). We will uphold the finding if more
than a scintilla of evidence supports it. See id. The evidence amounts to more than a scintilla if
reasonable minds could differ in their conclusions. See id.

 "Where a party is entitled to the benefits of a contract and can save himself from
damages resulting from its breach at a trifling expense or with reasonable exertions, it is his duty
to incur such expense and make such exertions . . . ." Walker v. Salt Flat Water Co., 96 S.W.2d
231, 232 (Tex. 1936). "When an injured party fails to comply with the duty to mitigate damages,
recovery is not permitted as to that part of damages that could have been avoided or was incurred
as a result of the failure to mitigate." Pinson v. Red Arrow Freight Lines, Inc., 801 S.W.2d 14,
15 (Tex. App.--Austin 1990, no writ). The jury heard evidence that in May 1997 Willis's agent
visited MBCI's counsel bearing a cashier's check for the amount of the outstanding invoices. In
December 1997, approximately seven months before trial, the County issued certificates of
substantial completeness for the County Project. Apparently, the jury concluded that with
"reasonable exertions" MBCI could have satisfactorily resolved the case and mitigated its damages,
perhaps by exchanging the warranty for the cashier's check in May or by tendering the warranty
after the certificates had been issued. There is more than a scintilla of evidence to support the
jury's mitigation finding. The district court properly reduced MBCI's award by $100,000.

 Third, MBCI asserts that the district court erred by entering a take-nothing
judgment against National, the surety for Willis. The Texas Government Code states that "[a]
governmental entity that makes a public work contract with a prime contractor shall require the
contractor, before beginning the work, to execute to the governmental entity: . . . a payment bond
if the contract is in excess of $25,000." Tex. Gov't Code Ann. § 2253.021(a)(2) (West 2000). 
This bond must be issued by a corporate surety for the protection of beneficiaries who contract
to supply labor or materials to the contractor. See id. § 2253.021(c)(1), (d) (West 2000). In
compliance with these provisions, the County required a payment bond, which was executed by
National.

 The Texas Government Code also provides as follows:


(a) A payment bond beneficiary who has provided public work labor or material
under a public work contract for which a payment bond is furnished under this
chapter may sue the principal or surety, jointly or severally, on the payment
bond if the claim is not paid before the 61st day after the date the notice for
the claim is mailed. 


(b) Suit may be brought under Subsection (a) for: 


 (1) the unpaid balance of the beneficiary's claim at the time the claim was
ailed or the suit is brought; and 


 (2) reasonable attorney fees.



Id. § 2253.073 (West 2000). "A court may award costs and reasonable attorney fees that are
equitable in a proceeding to enforce a claim on a payment bond . . . ." Id. § 2253.074 (West
2000) (emphasis added).

 Under the Texas Government Code, MBCI was entitled to sue National on the
unpaid invoices for materials supplied to Willis. The jury found that on the date suit was filed,
Willis owed $78,825.70 to MBCI; however, these damages were completely offset by MBCI's
failure to mitigate in the amount of $100,000. After applying the mitigation finding, MBCI was
owed no actual damages; therefore, the district court's judgment that MBCI recover no damages
against National, as surety on the payment bond, was proper.

 Where a statute provides that the court may award attorney fees, the trial court has
"discretion in deciding whether to award attorney fees or not." Bocquet v. Herring, 972 S.W.2d
19, 20 (Tex. 1998). In this case, the district court exercised its discretion in favor of National. 
A trial court abuses its discretion only when it acts in an unreasonable or arbitrary manner, or
when it acts without reference to any guiding rules and principles. See Beaumont Bank, 806
S.W.2d at 226. This Court may not reverse for abuse of discretion merely because we disagree
with a decision of the trial court, if that decision was within the trial court's discretionary
authority. See id. MBCI has failed to show that the district court abused its discretion in deciding
that a take-nothing judgment against National was "equitable," particularly in light of the jury's
finding that MBCI failed to mitigate

 In further support of its claim for attorney's fees, MBCI cites us to a number of
cases, each of which we find inapplicable to these facts. See Great Am. Ins. Co. v. North Austin
Mun. Util. Dist. Number 1, 908 S.W.2d 415, 418-19 (Tex. 1995) (stating that surety is liable
under performance bond, which is three-party contract naming obligee as beneficiary); New
Amsterdam Cas. Co. v. Texas Indus. Inc., 414 S.W.2d 914, 915-16 (Tex. 1967) (holding that
surety was not liable for attorney's fees under predecessors to chapter 2253 of Texas Government
Code or section 38.001 of Texas Civil Practice and Remedies Code); University State Bank v.
Gifford-Hill Concrete Corp., 431 S.W.2d 561, 568 (Tex. Civ. App.--Fort Worth 1968, writ ref'd
n.r.e.) (dealing with liability for fees under materialman's lien statute); W.E. Hilton v. Haden
Assocs., Inc., 458 S.W.2d 854, 859 (Tex. Civ. App.--Fort Worth 1970, no writ) (dealing with
different version of section 2253 of Texas Government Code, which stated that "claimant . . . shall
have the right . . . to sue the principal and the surety . . . for . . . attorney's fees"). In addition,
MBCI cites chapter 53 of the Texas Property Code as a basis for awarding its fees. See Tex.
Prop. Code Ann. ch. 53 (West 1995 & Supp. 2000). Chapter 53 applies to mechanic's,
contractor's, or materialman's liens and is not relevant to National's liability as a surety. See id.
§ 53.021 (West Supp. 2000). We find no basis, other than section 2253 of the Government Code,
for imposing liability on National.


Conclusion


 Having found no material fact issue with regard to Willis's defense of tender, we
affirm the grant of partial summary judgment in favor of Metal Building Components, Inc. 
Having found sufficient evidence to support the jury's findings and no abuse of discretion by the
district court, we affirm the judgment of the district court.



 

 Mack Kidd, Justice

Before Justices Jones, Kidd and Yeakel

Affirmed

Filed: October 12, 2000

Do Not Publish

1. Concurrently, Willis contracted to complete roof repairs for Midland Independent School
District. MBCI supplied the materials for the Midland Project as well. Although conflicts arose
and the Midland Project was joined as part of the original suit, the parties eventually settled. 
Therefore, the Midland Project is not at issue in this appeal.
2. Texas Revised Civil Statute Annotated article 2226 has since been codified as section 38.001
of the Texas Civil Practice & Remedies Code. Tex. Civ. Prac.& Rem. Code § 38.001 (West
1997). 


1">
 (1) the unpaid balance of the beneficiary's claim at the time the claim was
ailed or the suit is brought; and 


 (2) reasonable attorney fees.



Id. § 2253.073 (West 2000). "A court may award costs and reasonable attorney fees that are
equitable in a proceeding to enforce a claim on a payment bond . . . ." Id. § 2253.074 (West
2000) (emphasis added).

 Under the Texas Government Code, MBCI was entitled to sue National on the
unpaid invoices for materials supplied to Willis. The jury found that on the date suit was filed,
Willis owed $78,825.70 to MBCI; however, these damages were completely offset by MBCI's
failure to mitigate in the amount of $100,000. After applying the mitigation finding, MBCI was
owed no actual damages; therefore, the district court's judgment that MBCI recover no damages
against National, as surety on the payment bond, was proper.

 Where a statute provides that the court may award attorney fees, the trial court has
"discretion in deciding whether to award attorney fees or not." Bocquet v. Herring, 972 S.W.2d
19, 20 (Tex. 1998). In this case, the district court exercised its discretion in favor of National. 
A trial court abuses its discretion only when it acts in an unreasonable or arbitrary manner, or
when it acts without reference to any guiding rules and principles. See Beaumont Bank, 806
S.W.2d at 226. This Court may not reverse for abuse of discretion merely because we disagree
with a decision of the trial court, if that decision was within the trial court's discretionary
authority. See id. MBCI has failed to show that the district court abused its discretion in deciding
that a take-nothing judgment against National was "equitable," particularly in light of the jury's
finding that MBCI failed to mitigate

 In further support of its claim for attorney's fees, MBCI cites us to a number of
cases, each of which we find inapplicable to these facts. See Great Am. Ins. Co. v. North Austin
Mun. Util. Dist. Number 1, 908 S.W.2d 415, 418-19 (Tex. 1995) (stating that surety is liable
under performance bond, which is three-party contract naming obligee as beneficiary); New
Amsterdam Cas. Co. v. Texas Indus. Inc., 414 S.W.2d 914, 915-16 (Tex. 1967) (holding that
surety was not liable for attorney's fees under predecessors to chapter 2253 of Texas Government
Code or section 38.001 of Texas Civil Practice and Remedies Code); University State Bank v.
Gifford-Hill Concrete Corp., 431 S.W.2d 561, 568 (Tex. Civ. App.--Fort Worth 1968, writ ref'd
n.r.e.) (dealing with liability for fees under materialman's lien statute); W.E. Hilton v. Haden
Assocs., Inc., 458 S.W.2d 854, 859 (Tex. Civ. App.--Fort Worth 1970, no writ) (dealing with
different version of section 2253 of Texas Government Code, which stated that "claimant . . . shall
have the right . . . to sue the principal and the surety . . . for . . . attorney's fees"). In addition,
MBCI cites chapter 53 of the Texas Property Code as a basis for awarding its fees. See Tex.
Prop. Code Ann. ch. 53 (West 1995 & Supp. 2000). Chapter 53 applies to mechanic's,
contractor's, or materialman's liens and is not relevant to National's liability as a surety. See id.
§ 53.021 (West Supp. 2000). We find no basis, other than section 2253 of the Government Code,
for imposing liability on National.


Conclusion


 Having found no material fact issue with regard to Willis's defense of tender, we
affirm the grant o